IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAURENT H. MARTEAU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 4058 |
| v. | ) | |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) | Maria Valdez |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Laurent H. Marteau's claims for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 28] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 35] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

On June 17, 2008, Marteau filed a claim for Disability Insurance Benefits alleging disability since January 1, 2003. The claim was denied initially and upon

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 20, 2010. Claimant personally appeared and testified at the hearing. He was not represented by counsel at that time. Medical expert Dr. William Newman and vocational expert Cheryl Hoiseth also testified.

On January 13, 2011, the ALJ denied Marteau's claim for Disability Insurance Benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied his request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.    FACTUAL BACKGROUND[2]

### A.    <u>Background</u>

Marteau was fifty-one years old at the time of the ALJ hearing. He had previously worked as a gig grinder operator and a line worker. Plaintiff injured his back in 1998 or 1999 after falling on ice and saw Dr. Thomas Gagnon, a naturopath chiropractor, for the injury from 1999 through August 2002. His pain began to improve with muscle relaxers, but an automobile accident in December 2000 worsened his injury. He was seen by Dr. Krebs for that injury on January 22, 2001, alleging pain in the low back on the left side, extending into the left hip. An x-ray of his lumbar spine dated September 30, 2002 showed degenerative joint changes of the facet joints at the L5-S1 level, with mild degenerative changes at L2-L3. No

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

tenderness of the lower back was noted. He was diagnosed with a sprained back and advised to partake in physical therapy and exercise for his back pain. Marteau was injured in another car accident on November 4, 2002, resulting in back, shoulder, and knee pain.

He injured his left ulnar nerve on the job in 2001, and after returning to work, he worked light duty for about six months while wearing a brace. Plaintiff is right-hand dominant. While working light duty, Plaintiff made copies, worked on a computer, answered the telephone, and delivered parts. He was limited to lifting up to one pound, and he needed to use both hands or his right arm only to lift that weight. Plaintiff ultimately quit working on August 16, 2002. Marteau testified that it was dangerous for him to continue his work in a tool and die shop, because he sometimes has trouble making a fist, opening his hand (which he described as "like a claw"), and gripping. He claimed that he took only two pills for his left hand swelling but experienced eight months of side effects.

An EMG performed in February 2002 showed that Marteau had rather severe left ulnar neuropathy with muscle weakness and atrophy, and a claw left hand. A February 19, 2002 note from Dr. Bruce Dolitsky opined that Marteau had cubital tunnel syndrome and recommended surgery. Marteau declined the surgery after learning of the risks, stating that he wanted to think about it. The testifying medical expert, Dr. Newman, opined that the contemplated surgery is relatively simple and minor, requiring only about two weeks of recovery and having a nearly 100% success rate. A March 26, 2003 note from Dr. Craig Phillips, an orthopedic

surgeon, identified obvious stigma of ulnar nerve dysfunction with extremely weak abduction and adduction of the fingers and a loss of musculature. Dr. Phillips recommended that Marteau undergo a decompression with anterior transposition of the ulnar nerve, and Plaintiff agreed to have the procedure performed, although it appears he never did so. Marteau testified that he was thinking of having surgery in the near future.

Around December 2007, Marteau dislocated his knee. He wore a cast and was "laid up" for several months. He claims the knee still bothers him and "pops out."

Marteau claimed he can lift with his left hand if he holds his hand flat, but he experiences pain shooting down his arm and up to his shoulder. He stated that while he can drive, he has difficulty gripping the steering wheel, and it hurts to turn the wheel. Plaintiff alleges his back seizes up after about five minutes of lifting, and he can only lift five to ten pounds into his trunk if he wears a back brace. He was able to cut a neighbor's grass once a month in 2008, and after doing so, his left hand would swell up. Marteau is a practicing Jehovah's Witness, and as part of his faith, he walks about a block or two, going door-to-door proselytizing his faith. As of the date of the hearing, Marteau was not taking any type of narcotic or over-the-counter medication for his pain.

B. **Vocational Expert Testimony**

The ALJ asked the Vocational Expert ("VE") whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") at the light exertional level, limited to only occasional

fine manipulation with the non-dominant hand, could perform any of Plaintiff's past work. The VE said that the person could not, but other jobs would be available, including counter clerk (4,700 jobs in the fourteen-county Chicago area), lobby attendant (5,400 jobs), housekeeping cleaner (10,000 jobs), and cafeteria attendant (6,800 jobs).

### C.   ALJ Decision

The ALJ found at step one that Marteau had not engaged in substantial gainful activity from his alleged onset date of January 1, 2003 through his date last insured of June 30, 2008. At step two, the ALJ concluded that Claimant had severe impairments of ulnar palsy of his left hand and back strain. The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a Listing. The ALJ then determined that Marteau retained the RFC to perform light work. Specifically, the ALJ opined that Plaintiff could frequently lift or carry ten pounds, occasionally lift or carry twenty pounds, stand or walk for six hours in an eight-hour workday, and sit for about two hours in an eight-hour workday, with the additional restriction that he could only occasionally perform fine manipulation with his left hand. Having found at step four that Plaintiff could not perform any of his past relevant work, the ALJ found at step five, based upon the VE's testimony and Claimant's age, education, work experience and RFC, that Marteau can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I.    ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## II.     ANALYSIS

Claimant argues that the ALJ's decision was in error because: (1) the ALJ did not fairly develop the record in light of his unrepresented status at the hearing; (2) Plaintiff's credibility was improperly evaluated; and (3) the hypothetical posed to the VE did not account for all of his limitations.

### A.     <u>Development of the Record</u>

Plaintiff argues that the ALJ should have ordered consultative examinations, given that there was insufficient evidence to determine whether he was disabled.

Plaintiff further contends that the ALJ improperly failed to obtain medical records from Dr. Thomas Gagnon, whom he saw in 2003 for his hand and back problems.[3]

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). "This duty is enhanced when a claimant appears without counsel; then the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 1098 (citations and alterations omitted). The ALJ's duty may be discharged "by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Id.* (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)). There is, however, "no absolute requirement that an ALJ update the medical records to the time of the hearing." *Nelms*, 553 F.3d at 1099. But even when a claimant is unrepresented, the Commissioner is granted broad discretion in determining how much evidence to gather. *Id.* at 1098 ("'[A] significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the

---

[3] Plaintiff also argues that the ALJ's duty to develop the record required her to better explain to Marteau the role of the VE at the hearing. According to Plaintiff, he was not permitted to fully question the VE, which meant that he did not receive a fair hearing. Plaintiff, however, has cited no case law requiring the ALJ to give more of an explanation than that given during the hearing. Additionally, the Court has reviewed the portion of the transcript in which Marteau alleges the ALJ "derailed" his questioning of the VE. Although it might have been a better course to have allowed Plaintiff to speak more freely, it appears that the ALJ was attempting to explain the nature of the RFC to the claimant, not to prevent him from eliciting favorable testimony. In any event, Plaintiff's brief offers no specific argument about how he was prejudiced by not being able to ask any particular questions of the VE.

record fully and fairly.'") (quoting *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)).

"Once the [Commissioner] establishes that the record was developed fully and fairly, the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *see Nelms*, 553 F.3d at 1098 (holding that "an omission is significant only if it is prejudicial"). A plaintiff on appeal is required to "set forth specific, relevant facts – such as medical evidence – that the ALJ did not consider." *Nelms*, 553 F.3d at 1098 ("'Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.'") (quoting *Binion*, 13 F.3d at 246).

> 1. Records from Dr. Gagnon

Plaintiff acknowledges that the file reflects the Administration's attempt to obtain records from Dr. Gagnon, but he claims that the ALJ's heightened duty to an unrepresented claimant required her to follow up on the initial inquiry. Plaintiff, however, fails to offer support for his assertion that the ALJ had a duty to ask Dr. Gagnon more than once for the records. *See Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006) ("The judge had requested all of [claimant's] medical records from [her] physician and it was not the judge's fault that the physician failed to comply and that [claimant] failed to alert the judge to the problem. Even a *pro se* litigant bears some responsibility for making a record."); *see also* 20 C.F.R. § 416.912(d) ("We will make every *reasonable* effort to help you get medical reports from your

own medical sources when you give us permission to request the reports.")
(emphasis added).

Furthermore, Plaintiff's brief does not offer any proof of what was contained in Dr. Gagnon's records, let alone demonstrate that the failure to consider the records was prejudicial. *See Johnson*, 449 F.3d at 808; *cf. Nelms*, 553 F.3d at 1098-99 (faulting the ALJ for failing to gather and consider two years' worth of medical records that demonstrated that the plaintiff's condition had worsened).

### 2. Additional Consultative Examinations

Plaintiff next claims that because there was no development in the record of his left ulnar condition, the ALJ was obligated to order an examination; and because records from 2002 show degenerative changes in his spine, an examination should have been ordered to determine the extent of the worsening of his condition. Finally, Claimant argues that his testimony that he experiences depression should have signaled to the ALJ the need for a psychological consultative examination. Defendant responds that the ALJ fairly and fully developed the record and reasonably determined that additional examinations were not necessary.

With respect to Marteau's claim that the ALJ should have ordered an examination of his back, the Commissioner contends that an examination after the 2010 hearing would not have shed much light on the condition of his back in 2008, his date last insured. Plaintiff believes that a later test would have allowed the ALJ to draw an inference about the condition of his back in 2008.

The Court is unpersuaded that the ALJ abused her discretion in declining to order a consultative spinal examination or testing. The tests performed in 2002 revealed relatively moderate spinal changes, and the diagnosis at the time was of only a sprained back. The ALJ's light duty RFC is therefore consistent with the medical record. *Cf. Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) (finding the ALJ should have ordered additional medical evaluations where there was no evidence in the record supporting the ALJ's conclusion about the plaintiff's lifting ability). Another case cited by Plaintiff, *Thompson v. Sullivan*, 933 F.2d 581, 587 (7th Cir. 1991), also does not support his position, as the ALJ there failed to order additional imaging tests on the plaintiff's spine when the last tests revealed not only degenerative changes but osteoarthritis of the cervical and lumbar spine. *Id.* at 583.

The fact that agency physicians opined that there was insufficient evidence to assess Marteau's claims does not, by itself, obligate the ALJ to create such evidence:

> [Plaintiff] also thinks the ALJ should have ordered a consultative examination. The ALJ is not *required* to order such examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient. *See* 20 C.F.R. §§ 416.912(f), 416.917. In support of her position, [Plaintiff] quotes the ALJ's opinion, which notes the "very limited objective medical evidence" of disability. [Plaintiff] believes this statement reflects the ALJ's recognition of the need for additional evidence. [Plaintiff] misconstrues this comment. The ALJ was highlighting the lack of objective medical data to support [Plaintiff's] claimed disability and the predominance in the record of [Plaintiff's] own subjective complaints; he was not commenting on a gap in the medical evidence that a consultative examination would have filled. The ALJ was not required to order a consultative examination in order to adequately develop the record.

*Skinner*, 478 F.3d at 844.

There was little evidence in the record because Marteau did not seek medical care for his alleged back pain for many years prior to the hearing, nor did he take even over-the-counter medication. Plaintiff had been advised of surgical options for his hand, and he did not pursue them. He did not seek help for his depression because he believed he could handle it on his own. Plaintiff's brief offers no further insight into the reasons he failed to seek treatment. His lack of treatment was consistent with the prior medical record, and thus another examination was not needed to clear up any discrepancies, nor were his reported life activities so limited that they needed to be reconciled with an incomplete medical history.

The ALJ in this case conducted a comprehensive hearing, lasting over one and a half hours, inquiring into all relevant facets of Marteau's medical history and treatment, current activities, and physical abilities. *See Binion*, 13 F.3d at 245. Plaintiff has pointed to no specific evidence that was not considered by the ALJ, and he has not shown any prejudice. Marteau has not offered any physician statements that his RFC is more limited than that found by the ALJ, nor has he has not presented any new medical evidence at any stage after the hearing, even though he is now represented by counsel. *See id.* at 246 (explaining that the court may not reverse a disability finding on the basis of new evidence, but it "would weigh heavily in determining whether a remand is necessary"). Marteau's argument is based solely on his speculative belief that consultative examinations would have revealed a basis for disability, and that is "insufficient to warrant a remand." *Id.*; *see also Luna*, 22 F.3d at 693 ("[A]lthough the Secretary has the burden of proving

[claimant's] capability to perform sedentary work, it was [claimant's] duty, under 20 C.F.R. § 404.1512(a), to bring to the ALJ's attention everything that shows that he is disabled.").

**B.** <u>**Credibility**</u>

Marteau next argues that the ALJ's analysis of his credibility was improper because it did not fully and fairly discuss all relevant factors. An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). When evaluating a plaintiff's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the

precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see* SSR 96-7p at *3. If the claimant attends an administrative hearing, the ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p at *5.

In analyzing Plaintiff's credibility, the ALJ found that his self-reported personal and work activities to undercut his allegations of completely disabling symptoms. The ALJ acknowledged that Marteau's reported daily activities were somewhat limited, but declined to give his reports significant weight. First, the ALJ concluded that his self-reports could not be verified to any degree of certainty, and second, to the extent his activities were limited, it was not clear that they were limited for medical reasons, given the weak medical evidence in the record. The ALJ noted that Marteau continued to work after his 2001 hand injury, using a computer, making copies, answering the phone, and making deliveries. Additionally, Marteau worked for a brief period of time in 2005, and the duties performed were not greater than those within the scope of the RFC determination. The ALJ also discussed Marteau's testimony that he had been recently been getting depressed but did not include that non-exertional limitation in the RFC because he also stated he had been handling it by himself, without the need for medication or counseling.

The ALJ concluded that none of the medical evidence in the record supports a more restrictive RFC finding or additional limitations other than those already

included in the RFC. Dr. Newman testified that Marteau's back pain would allow him to perform work at the light exertional level, and he also stated that the left ulnar palsy would only cause some limitation of fine manipulation in the left hand. The ALJ gave considerable weight to Dr. Newman's testimony, which she found to be consistent with the record, Plaintiff's testimony, and the medical evidence.

Plaintiff contends that the ALJ unfairly considered his daily activities and brief work history to be evidence that he could sustain employment; the ALJ should have considered his long work history prior to his injury as support for his credibility; and the ALJ should have given more weight to the statement of agency physicians that, although additional information was needed, Plaintiff's allegations were credible and consistent with the medical findings.

While the ALJ's credibility determination relied in part on the language sharply criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), the decision went beyond the boilerplate by noting that Plaintiff's medical history, current course of treatment, and daily activities were inconsistent with wholly disabling pain. As discussed above, the ALJ was not obligated to order more examinations to determine whether Plaintiff's medical condition had worsened, when Marteau himself had not experienced the need for medical treatment for many years. Similarly, the Court will not fault the ALJ for not learning the reasons Marteau had not sought treatment, when his own brief fails to shed any light on that fact.

The fact that another adjudicator may have come to a different conclusion based on the record is not a sufficient basis to overturn the ALJ's credibility determination. Claimant has not shown that the ALJ was unreasonable in giving greater weight to the medical evidence, which failed to support his objective complaints of disabling pain, than it did to his testimony. The ALJ's credibility finding was specific, it was not patently wrong, and it will not be disturbed by this Court.

**C.**     **Limitations in Hypothetical**

Plaintiff contends that the hypothetical question posed to the VE improperly included the ability to occasionally use his left hand for fine manipulation, while the testifying medical expert concluded that any fine manipulation would need to be performed with his right hand. Marteau claims that if he had been represented at the hearing, his attorney would have recognized the discrepancy and would have asked the VE whether the listed jobs would still be available for a person who could not use his left hand at all for fine manipulation. Additionally, Marteau argues that if he had an attorney, counsel would have asked the VE when the listed job titles were last updated in the Dictionary of Occupational Titles ("DOT"), and whether the titles had changed since that time.

The Commissioner responds that what counsel may or may not have done is irrelevant, as Marteau knowingly waived his right to representation. In addition, the ALJ could presume that the VE included in her assessment any limitations discussed by the testifying medical expert.

The Court agrees that because Dr. Newman testified at the hearing that Plaintiff should perform fine manipulation only with his right (dominant) hand, it can be presumed that the VE accounted for that limitation in her testimony. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("The hypothetical need not include every physical limitation, provided that the vocational expert had the opportunity to learn of the applicant's limitations through, for example, . . . other questioning at the hearing.").

## CONCLUSION

For the foregoing reasons, Plaintiff Laurent H. Marteau's motion for summary judgment [Doc. No. 28] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 35] is granted.

**SO ORDERED.**                    **ENTERED:**


**DATE:    February 13, 2015**     _____
                                   **HON. MARIA VALDEZ**
                                   **United States Magistrate Judge**